IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| KEVIN FORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | NO. 4:10-CV-427-A |
| ASSOCIATED WHOLESALE GROCERS, | § | |
| INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION
### and
### ORDER

Now before the court is the motion for summary judgment filed in the above action by defendant, Associated Wholesale Grocers, Inc. Having now considered the motion, the response of plaintiff, Kevin Ford, defendant's reply,[1] the entire summary judgment record, and applicable legal authorities, the court concludes that the motion should be granted.

### I.

### Plaintiff's Claims

Plaintiff initiated this removed action by the filing on May 5, 2010, of his original petition in the state district court of Tarrant County, Texas. In the petition, plaintiff brings claims

---

[1] Defendant also filed objections and motion to strike portions of plaintiff's summary judgment affidavit. Rather than ruling on the motion, the court will give the disputed evidence whatever weight and consideration it deserves.

and causes of action against defendant for racial discrimination and retaliation in violation of Chapter 21 of the Texas Labor Code.

II.

## The Motion for Summary Judgment

Defendant contends that summary judgment is proper as to all of plaintiff's claims because plaintiff cannot establish a prima facie case of either discrimination or retaliation, and because he has no evidence that defendant's legitimate, non-discriminatory reasons for plaintiff's termination are a pretext for unlawful discrimination or retaliation.

III.

## Undisputed Facts

The following facts are undisputed in the summary judgment record:

Plaintiff, who is African-American, began his employment with defendant's predecessor in 1989. Defendant purchased the company in 2007, and in August 2007 plaintiff became a warehouse supervisor, reporting to Mark Smith ("Smith"), warehouse manager, and Craig Zimmerman ("Zimmerman"), warehouse director.[2] On July

---

[2]Plaintiff characterizes his placement in the warehouse supervisor position as a promotion, while defendant indicates this was the position into which plaintiff was first hired. The distinction appears to
(continued...)

24, 2007, plaintiff received copies of defendant's anti-harassment policy, confrontation/workplace violence policy, and "house rules." These policies provide for immediate dismissal if any employee engages in arguing, fighting, making threats, "or any type of altercation," or for "[d]iscourteous acts and/or verbal abuse directed towards other persons within the facility," "[q]uarreling or fighting with other employees," and "[i]nsubordination," among other things. Def.'s App. to its Mot. for Summ. J. ("Def.'s App.") at 7-9. Plaintiff also received a copy of defendant's employee handbook.

Defendant has in place a toll-free telephone number via which employees may make anonymous complaints concerning issues in the workplace. Each call to the toll-free number generates a report titled "Alertline Confidential Memorandum." Id. at 10.

During the course of 2009, three such complaints were made against plaintiff in his supervisory capacity. The first one, on January 8, 2009, complained that plaintiff made a discriminatory remark about Caucasians. The second, on May 1, 2009, alleged that plaintiff mistreated employees by speaking in a disrespectful manner and forcing employees to work long hours.

---

²(...continued)
be immaterial to the outcome of the motion for summary judgment.

3

The third complaint was made on August 17, 2009, by an employee who complained that plaintiff had treated him unfairly in regards to job assignments and threatened him with termination if he complained to upper management.

Rodney Turrubiates ("Turrubiates"), defendant's director of human resources, investigated each complaint. He was unable to confirm the allegations of the January and August complaints. As to the May complaint, Turrubiates concluded that plaintiff had probably engaged in some of the tactics noted in the complaint, but also noted that plaintiff had been a "good performer in the past." Id. at 18.

In August 2009, defendant promoted plaintiff to warehouse superintendent, a position in which plaintiff supervised other warehouse supervisors. One of the individuals supervised by plaintiff was Bryan Pomeroy ("Pomeroy").

The incident leading to plaintiff's termination occurred on October 1, 2009. The incident involved plaintiff and Pomeroy; however, the parties dispute the details of what transpired. Although the facts are in dispute, the court will briefly summarize the parties' versions of events to provide context for the remainder of this memorandum opinion.

Turrubiates's investigation of the incident included

4

interviews with plaintiff, Pomeroy, Dorothy Mullenix ("Mullenix"), an employee who witnessed the encounter, and Mike Tisby ("Tisby"), another supervisor who was not on the premises when the incident occurred. According to Mullenix, the only neutral eye-witness to the incident, she, Pomeroy, and plaintiff were in a shipping office when plaintiff instructed Pomeroy to turn in a certain number of loads "right now." Id. at 32.

An argument ensued between plaintiff and Pomeroy that eventually escalated into them cursing and yelling at each other about whether Pomeroy would do what plaintiff told him to do. At one point, Mullenix claimed plaintiff rolled his chair over to Pomeroy's so they were very close together, with plaintiff pointing his finger at Pomeroy. Both stood up from their chairs to move into Smith's office and were just inches from each other, yelling, causing Mullenix to think they were going to start fighting. They moved into Smith's empty office for a few minutes but then left, still yelling. Mullenix sent a text message to Tisby about what was happening. Smith was also called, and he suspended both plaintiff and Pomeroy pending an investigation. Plaintiff was also instructed not to contact any of defendant's employees during the course of the investigation; however, Mullenix said plaintiff contacted her four or five times before

5

the investigation was complete.

While plaintiff admits to having a confrontation with Pomeroy, plaintiff claims Pomeroy alone lost control, cursed, and became insubordinate. Plaintiff claims he remained calm, never yelled at Pomeroy, never cursed, and never did anything to escalate the situation. Plaintiff also denies being told not to contact witnesses to discuss the incident.

Following the investigation into the incident with Pomeroy, Zimmerman and Smith made the decision to terminate the employment of both plaintiff and Pomeroy.

IV.

## Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving

party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324. See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" in response to a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002) (internal quotation marks omitted).

V.

Analysis

A. Evidentiary Framework

To evaluate claims of discrimination or retaliation under Title VII, absent direct evidence, the court looks to the evidentiary burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as modified by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).[3] See also McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007) (per curiam). This framework, in turn, requires plaintiff first to establish a prima facie case. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

If plaintiff makes out a prima facie case, a presumption of discrimination or retaliation arises and the burden shifts to defendant to articulate a legitimate, non-discriminatory or non-retaliatory reason for its actions. Id. at 506-07. If defendant meets this burden of production, the plaintiff bears the ultimate burden of proving that the employer's proffered reason is not

---

[3]Although plaintiff's claims arise under the Texas Labor Code, such claims are analyzed using the same evidentiary framework and legal standard as those arising under federal anti-discrimination law. Culwell v. City of Fort Worth, 468 F.3d 868, 873 n.3 (5th Cir. 2006); NME Hosps., Inc. v. Rennels, 994 S.W.2d 142, 144 (Tex. 1999).

8

true but instead is a pretext for intentional discrimination or retaliation. Id. at 507; McCoy, 492 F.3d at 557.

B. The Merits

1. No direct evidence

Plaintiff initially contends that the record contains direct evidence of defendant's intentional discrimination on the basis of race. "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002) (internal citation omitted). The "direct evidence" on which plaintiff apparently relies includes allegations by plaintiff of alleged racist comments made to him by his supervisors and by Pomeroy, none of which can be considered direct evidence.

The alleged racist comments include: a statement allegedly made by Chris Green ("Green"), an operations manager, in 2007 during a meeting where plaintiff and other supervisors were present that, if the listeners did not do what Green said, he would "get a rope, wrap it around a beam, string you up and kick the chair out from under you," Pl.'s Corrected App. to Resp. to Def.'s Mot. for Summ. J. ("Pl.'s App.") at 3; Smith's references to plaintiff and other African-American supervisors as "clowns,"

9

id. at 3-4; telling plaintiff and other supervisors they "look like deer with the headlights on them, that's what I shoot," id. at 4; and a remark by Smith sometime in 2009 to plaintiff that "I will tie you up, leave you in the woods and then come back and hunt you if you got away," id. Plaintiff also complains of certain comments allegedly made by Pomeroy: that he, Pomeroy, did not have to follow plaintiff's instructions, calling plaintiff and two other African-American supervisors "three blind mice," and saying that the three were the "blind leading the blind." Id. at 2.

Comments of the type described by plaintiff are evidence of discrimination only if they are: "1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 380 (5th Cir. 2010). The comments alleged by plaintiff to show direct evidence of discrimination fail in almost all of these respects. Some of the comments are alleged to have been made in 2006 or 2007, and are thus not proximate in time to plaintiff's termination; no date is given as to when other comment were made,

so proximity is impossible to determine. Nor do any of the comments appear in any way related to plaintiff's termination, and some, directed towards others as well as plaintiff, are not on their face related to plaintiff's protected class. Others, such as those by Green and Pomeroy, were not made by individuals with authority over the termination decision. While such comments may reflect poorly on the individuals making them, they may at most be considered "stray remarks," but not direct evidence of discrimination.

Other than the alleged comments, plaintiff refers the court generally to the facts alleged in his brief as further direct evidence of discrimination. Plaintiff has failed to direct the court to specific examples of things said or done that prove defendant's discriminatory animus, without further inference or presumption.[4]

2. <u>No Circumstantial Evidence</u>

Defendant contends plaintiff has failed to establish a <u>prima facie</u> case of either race discrimination or retaliation. While

---

[4]In his affidavit, plaintiff alleges some employees engaged in discriminatory conduct directed at other African-American employees. In his sworn discovery responses also included in his appendix, however, plaintiff admits to having no personal knowledge of these incidents. For example, although plaintiff alleges that Pomeroy and Zimmerman made racist comments about other African-American employees, he admits he never personally heard such comments. The court will not consider as evidence hearsay statements or conclusory assertions not based on personal knowledge. <u>Cormier v. Pennzoil Exploration & Prod. Co.</u>, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam).

the court finds these arguments persuasive, it need not resolve those issues, because plaintiff has failed to adduce evidence of pretext as to either claim.[5]

Defendant contends it terminated plaintiff's employment because he failed to properly manage staff and created a hostile atmosphere due to his partial responsibility for the altercation with Pomeroy, and was insubordinate by contacting witnesses to the Pomeroy altercation after being told not to do so. Job performance is a legitimate, non-discriminatory reasons for plaintiff's termination. Lemaire v. La. Dept. of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007). The burden shifts to plaintiff to show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." Jackson, 602 F.3d at 378-79 (internal citations and quotation marks omitted).

Plaintiff first disputes defendant's characterization that he failed to properly manage his staff and created a hostile work environment.[6] Plaintiff directs the court to his July 31, 2009,

---

[5]Plaintiff argues that defendant has not offered a legitimate, non-discriminatory reason for plaintiff's termination. The basis for this argument is unclear and seems to be intermingled with plaintiff's attempts to prove pretext, which is how the court will consider plaintiff's argument. Defendant's burden was one of production, rather than persuasion, and it has met that burden. McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007) (per curiam).

[6]The record is unclear if these reasons reflected defendant's perception of plaintiff's management
(continued...)

annual review, where he received "successfully meets" on sixteen out of eighteen performance measures, as well as an overall "successfully meets." Pl.'s App. at 11-16. The court notes that the performance review came after the January 8, 2009, and May 1, 2009, Alertline complaints, but preceded both the August 17, 2009, complaint and the Pomeroy incident. Although a plaintiff's subjective assessment of his performance is insufficient to overcome summary judgment, Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 408 (5th Cir. 1999), plaintiff's performance review is objective evidence that could raise a fact issue as to defendant's first reason for plaintiff's discharge, if that reason applied to plaintiff's management ability generally.

Plaintiff, however, must rebut each of defendant's nondiscriminatory or nonretaliatory reasons for the adverse employment action. McCoy, 492 F.3d at 557. Plaintiff characterizes defendant's other reasons for his termination as "purely a fiction created by Defendant," Pl.'s Corrected Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Br.") at 16. As evidence of pretext plaintiff offers his version of the events that transpired, which he claims demonstrate that he acted

---

[6](...continued)
generally, or referred only to his handling of the Pomeroy incident.

properly, and his denial that he engaged in any of the conduct defendant ascribed to him. Plaintiff also denies being told not to contact employee witnesses, including Mullenix, about the Pomeroy incident.

Plaintiff, however, must do more than merely dispute his employer's investigation into a matter to overcome summary judgment, as it is well-settled that a plaintiff's self-serving denial of allegations of misconduct fails to create an issue of fact as to pretext. Jackson, 602 F.3d at 379. In investigating an employee's alleged policy violations, "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995). Merely disputing or denying the underlying facts of an investigation, or asserting innocence, are insufficient to create fact issues as to the falsity of the defendant's explanation. Jackson, 602 F.3d at 379; Lemaire, 480 F.3d at 391.

Here, defendant investigated the incident by interviewing witnesses, including plaintiff and Pomeroy, over a period of a few days. Upon conclusion of its investigation, defendant determined that plaintiff was partly responsible for the altercation with Pomeroy, that he acted unprofessionally, and

14

insubordinately contacted Mullenix after being instructed not to. Defendant made the decision to terminate the employment of both plaintiff and Pomeroy due to the involvement of both in the altercation.

Plaintiff has done nothing but argue that he did nothing wrong and that defendant made the wrong decision. More than plaintiff's denial of wrongdoing and subjective belief that he handled the Pomeroy incident correctly is required to show pretext. Jackson 602 F.3d at 379; Lemaire, 480 F.3d at 391. Courts are not vehicles for second-guessing an employer's business decisions. Lemaire, 480 F.3d at 391. "Our anti-discrimination laws do not require an employer to make proper decisions, only non-[discriminatory] ones." Id. (internal citations omitted). Even if defendant reached an erroneous conclusion regarding plaintiff's conduct or his violation of company policies, plaintiff has adduced nothing to show that discriminatory animus motivated the decision.

As to his retaliation claim, plaintiff "ultimately must prove that [defendant's] stated reason for the adverse action was merely a pretext for the real, retaliatory purpose." Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 806 (5th Cir. 2007) (internal citations and question marks omitted). "The proper

15

standard of proof . . . [for] a Title VII retaliation claim is that the adverse employment action . . . would not have occurred 'but for' [the] protected conduct." Id. (internal citations, quotation marks, brackets, and ellipsis in original).

Plaintiff attempts to rebut defendant's argument that he failed to establish a prima facie case of retaliation, but makes no attempt to show pretext as to that claim, aside from his conclusory assertion that "but-for his complaints he would not have been terminated." Pl.'s Br. at 20. A plaintiff's subjective belief that he is the victim of retaliation, no matter how sincerely held, is insufficient to prove pretext or defeat summary judgment. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[7]

## VI.

## Order

Therefore,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, and that all claims and

---

[7]Although plaintiff relies on what he characterizes as the "suspicious timing" between his complaints of alleged discriminatory treatment and his termination to help establish his prima facie case, the Fifth Circuit has made clear that "temporal proximity alone is insufficient to prove but for causation." Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 808 (5th Cir. 2007). Further, the record contains no evidence of any such comments close enough in time to plaintiff's termination to evidence retaliatory intent. Id. at 808 (three and a half months between complaint and termination, without more, insufficient to prove "but for" causation).

causes of action brought by plaintiff, Kevin Ford, against defendant, Associated Wholesale Grocers, Inc., be, and are hereby, dismissed with prejudice.

SIGNED April 22, 2011.

_____
JOHN McBRYDE
United States District Judge